IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA           *
                                   *
        v.                         *        CASE NO. 8:19-cr-444-GJH
                                   *
SANDRA DENISE CURL,                *
                                   *
        Defendant.                 *
                                   *
                                   *
                             *******

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America respectfully submits this memorandum in aid of sentencing for Sandra Denise Curl ("the defendant"), who was convicted of multiple fraud offenses following a jury trial. The defendant conspired to defraud the Internal Revenue Service ("IRS") into paying tax refunds worth $2,115,329 and successfully defrauded the IRS into issuing more than $1 million in refunds. Curl's participation in the conspiracy spanned several years and she persisted in her fraudulent conduct despite warnings from the IRS. Indeed, she persisted even despite learning of the indictment of an individual running a similar scam. For her serious, brazen fraud, the government recommends the Court impose a Guidelines sentence of 51 to 63 months' imprisonment, a three-year period of supervised release, and an order of restitution in the amount of $1,056,044. Such a sentence would be commensurate with the seriousness of the offense, factors identified in the Presentence Investigation Report ("PSR"), and the Section 3553(a) factors. In support of this motion, and to assist the Court in fashioning an appropriate sentence, the government submits this memorandum in aid of sentencing.

## I.    BACKGROUND

Sandra Denise Curl spent years partaking in and promoting a scheme to defraud the IRS of over two million dollars. Between 2013 and 2016, Curl and her co-defendant, Percy Leroy Jacobs

1

("Jacobs"), caused the filing of nine false tax returns fraudulently claiming $2,115,329 in tax refunds. They succeeded in stealing $1,056,044 in tax refunds from the IRS.

The core of the conspiracy involved the filing of false tax returns claiming refunds in the name of sham trusts, supported by additional false documents. The defendants conspired to file six false Forms 1041, U.S. Income Tax Return for Estates and Trusts, in the name of purported trusts they controlled. On those forms, they claimed hundreds of thousands of dollars in federal income tax withholdings on behalf of those trusts, even though those trusts had neither income nor tax withholdings. They did so to claim income tax refunds in similar amounts. These false Forms 1041 are as follows:

| Trust Name | Tax Year | Fraudulent Refund Claim | Ex. # |
|---|---|---|---|
| Trinytee SMP Day Spa Trust | 2012 | $500,136 | 1 |
| Domenion Construction Trust | 2013 | $525,948 | 8 |
| Playhouse Gallery Fun Trust | 2014 | $267,482 | 14 |
| Playhouse Gallery Fun Trust | 2015 | $277,802 | 18 |
| Women's Health Relations Trust | 2015 | $250,579 | 24 |
| Land and Sea Global Enterprises Trust | 2015 | $265,573 | 31 |

The defendants initiated their three-year conspiracy as early as February 14, 2013. That day, the defendants obtained an Employee Identification Number ("EIN") for Domenion Construction Trust, thereby registering it with the IRS. Curl emailed that EIN to Jacobs the same day. (Gov't Exh. 77). It wasn't until July 15, 2014, roughly a year-and-a-half later, that the defendants exploited that EIN to fraudulently claim $525,948 on behalf of Domenion Construction. (Gov't Exh. 8). The defendants proceeded to operate in a similar fashion throughout their three-year conspiracy with respect to their other trusts.

In addition to the false trust returns, the defendants filed three false Forms 1040, U.S. Individual Income Tax Returns, in their own names. On those, they also falsely claimed income and tax withholdings in order to fraudulently obtain refund checks. The false individual income

tax returns they filed were as follows:

| Filer Name | Tax Year | Fraudulent Refund Claim | Exh. # |
|---|---|---|---|
| Sandra Denise Curl | 2015 | $6,687 | 37 |
| Percy Leroy Jacobs | 2015 | $6,682 | 41 |
| Percy Leroy Jacobs | 2014 | $14,440 | 45 |

Ultimately, the IRS sent Treasury Checks in response to three of the defendants' false returns. It issued a $505,383 refund check to Curl's Trinytee SMP Day Spa Trust, a $272,205.80 check to Jacobs' Playhouse Gallery Fun Trust, and another to Curl's Women's Health Relations Trust in the amount of $250,579. (Gov't Exh. 53, 62, 58). The evidence at trial, as summarized in Gov't Exh. 253, shows that after the defendants deposited those checks, they wrote checks to each other, an account belonging to Domenion Construction Trust, and Traci Brown (Jacobs's partner). And in one instance, $30,000 from the ill-gotten proceeds was paid to the Porsche of Arlington. (Gov't Exh. 55).

The defendants knew what they were doing was illegal, but they carried on with their scheme. For example, on July 25, 2014, defendant Curl received a telephone call from an IRS Revenue Officer requesting that she return the proceeds of the fraudulently-procured Treasury check to Trinytee SMP Day Spa Trust. Instead, that same day, the defendant wrote a $46,000 check to "cash" out the remaining funds in the Trinytee SMP Day Spa Trust bank account. (Gov't Exh. 144, 54). By August 19, 2014, Curl had also received a warning letter from the IRS (a Form 3176) regarding the Trinytee SMP Day Spa Trust return, noting that the return was frivolous and warning of a $5,000 penalty if the return was not corrected within 30 days. (Gov't Exh. 92). By December 24, 2014, Jacobs had supplied the defendant with a separate IRS Form 3176 letter that he had received warning him about the false Form 1041 he filed for Domenion Construction Trust. (Gov't Exh. 89). Despite all these warnings, on April 19, 2015, Jacobs filed yet another false refund claim (Count 4).

On August 24, 2015, Curl received an email from Susie Fish  attaching a copy of the federal arrest warrant and indictment in this Court of Fish for theft of over $900,000 of government funds by means of a false Form 1041 return of the same type as Curl and Jacobs had earlier filed.  (Gov't Exh. 79).  Nevertheless, Curl and Jacobs still filed three more of the same type of false Forms 1041 claiming refunds of taxes that were never paid.  Those false claims for refund were filed in 2016 and charged and convicted at (Counts 5, 6, and 7).

On September 25, 2019, a grand jury returned an indictment charging the defendants with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371.  Additionally, Curl was charged with three counts of aiding and assisting the preparation of a false tax return, in violation of 26 U.S.C. § 7206(2), and one count of theft of government property, in violation of 18 U.S.C. § 641.  Jacobs was also charged with six counts of aiding and assisting the preparation of a false tax return, in violation of 26 U.S.C. § 7206(2), and one count of theft of government property, in violation of 18 U.S.C. § 641.  Following arraignment, the defendants were released and ordered to remain on personal recognizance.  Throughout 2020 and 2021, the defendants bombarded the Court with frivolous and nonsensical pleadings.  (See, e.g., ECF Nos. 44, 55, 56, 58, 59, 60, 61, 66, 67, 69, 70, 80, 81, 88, 95, and 96).

On March 28, 2022, the defendants were found guilty by a jury on all counts.

## II.   SENTENCING CALCULATIONS

### A.  Statutory Maximums

Each violation of 18 U.S.C. § 371 carries a maximum sentence of 5 years' imprisonment; a fine of not more than $250,000; and a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2).

Moreover, each violation of 26 U.S.C. § 7206(2) carries a maximum sentence of 3 years'

imprisonment; a fine of not more than $100,000; and a term of supervised release of not more than one year, pursuant to 18 U.S.C. § 3583(b)(3).

Finally, each violation of 18 U.S.C. § 641 carries a maximum sentence of 10 years' imprisonment; a fine of not more than $250,000; and a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2).

### B. Applicable Sentencing Guidelines

The United States Sentencing Guidelines are not mandatory. *United States v. Booker*, 542 U.S. 220 (2005). The Supreme Court has made clear, however, that even though the Guidelines are advisory, they are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007). Thus, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Id*. at 49.

The government agrees with the Guidelines calculation for Sandra Curl contained in the PSR:

| | |
|---|---|
| Base Offense Level: | 22 (2T1.9(a)(1), 2T1.4(a)(1), and 2T4.1(I)) |
| Specific Offense Characteristics: | +2 (2T1.9(b)(2), Promotion of Tax Scheme) |
| Total Offense Level: | 24 |
| Criminal History Category: | I |
| **Guidelines Range:** | **51 to 63 months** |

#### i.   *Tax Loss*

The government agrees with the PSR that the base offense level results from an intended tax loss of $2,115,329. (PSR at ¶ 21). That is the sum of the fraudulent tax refund claims flowing from Curl and Jacobs's conspiracy. The false tax returns underlying the fraudulent claims are as follows:

| Count | Defendant | Form | Fraudulent Refund Claim Amount |
|---|---|---|---|
| 2 | Curl | 1041 | $500,136 |
| 3 | Jacobs | 1041 | $525,948 |
| 4 | Jacobs | 1041 | $267,482 |
| 5 | Jacobs | 1041 | $277,802 |
| 6 | Curl | 1041 | $250,579 |
| 7 | Jacobs | 1041 | $265,573 |
| 8 | Curl | 1040 | $6,687 |
| 9 | Jacobs | 1040 | $6,682 |
| 10 | Jacobs | 1040 | $14,440 |
| | | **Total:** | **$2,115,329** |

    *ii.*    *Promotion of Tax Scheme*

As the PSR notes, under USSG 2T1.9(b)(2), a two-point enhancement should apply because the defendant promoted the use of false Forms 1041 to defraud the government. (PSR ¶ 22). The defendants worked in collaboration with another co-conspirator, Thy Muhammad ("Muhammad"). As the defendant herself said in a September 28, 2013 email to Muhammad, she had referred Royall Jenkins, Percy Jacobs, Daphne Walker, John Andrews, and Joyce Hardy to Muhammad for "the process." (Gov't Exh. 101). On March 26, 2014, the defendant sent Muhammad another referral email as follows: "Peace be unto to you Brother Thy. Here is my referral for the next upcoming process: Daphne Walker Ali." The testimony of Muhammad showed that he believed "the process," also known amongst those who espouse this particular type of tax fraud as "the Treasury offset procedure" was "the procedure of filing 1041s and claiming your -- the money that you had in the U.S. Treasury that the collateral of your birth certificate and social security instruments were based on." Trial Tr. March 24, 2022 at 153. This distorted and obviously non-sensical position appears to be the purported justification for filing false Forms 1041 requesting huge refunds of taxes never paid.

At least one false Form 1041 prepared by Muhammad for Royall Jenkins resulted in a Form 3176 warning letter that Curl received from Dr. Peach on December 22, 2014: "[A]ttached is the

letter Father received for the IRS about Frivolous submission." (Gov't Exh. 80). On April 27, 2015, Curl sent an email to Jacobs instructing him to "sign father's name and scan and send back to Mushy." (Gov't Exh. 121). Attached to the email was a Form 1041 for the Royall Jenkins El Trust fraudulently requesting a refund in the amount of $237,067 that had been prepared by Ronald "Mushy" Brown. (Id.)

## III. SECTION 3553(a) FACTORS

The Court is required to consider the factors laid out in 18 U.S.C. § 3553(a) in imposing a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in that statute. In this case, those factors call for a sentence within the Guidelines range, as recommended by the government, because of the flagrant and brazen nature of the conspiracy; the need to preserve the integrity of the nation's self-reporting tax system, which necessitates that the relatively few criminals who are caught undermining and exploiting this system must be punished to deter others; the prevalence of similar schemes among tax defiers and "sovereign citizens;" the defendant's disregard for the rule of law; and the consistency between a Guidelines sentence and those imposed on others convicted at trial for similar conduct.

### A. The recommended sentence is necessary to afford adequate deterrence to criminal conduct.

In criminal tax cases, the paramount consideration for the Court at sentencing is "the need to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(3). For tax crimes, in particular, a Guidelines sentence is necessary to promote general deterrence because the U.S. tax system relies on honest self-reporting and tax crimes are under-prosecuted compared to the frequency of offenses. The introductory commentary to the Guidelines for federal tax offenses emphasizes the need for sentencing courts to consider deterrence when imposing a sentence on tax offenders:

> The federal criminal tax laws are designed to protect the public interest in reserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying the Sentencing Guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

USSG, Ch. 3, pt. T, intro. cmt.

The nature of our country's income tax system underscores the importance of general deterrence in sentencing tax crimes. Our tax system relies on taxpayers annually to accurately calculate, report, and pay their tax liabilities every year. With 261,017,434 income tax returns received by the IRS in fiscal year 2021, the IRS simply cannot, and does not, review all tax returns for 100% accuracy. 2021 IRS Data Book, Table 2.[1] And due to the sheer numbers involved, only a small portion are pursued criminally—the government initiated only 1,920 investigations of tax crimes related to non-narcotics financial or tax crimes in FY 2021. *Id*. at Table 24. Thus, "[g]iven the nature and number of tax evasion offenses as compared to the relatively infrequent prosecution of those offenses…the [Sentencing] Commission's focus on incarceration as a means of third-party deterrence is wise." *United States v. Engle*, 592 F.3d 495, 502 (4th Cir. 2010).

While this system can be exploited by tax cheats who want to underreport and underpay their own tax liabilities, it is similarly vulnerable to fraudsters, like this defendant, who pepper the IRS with false claims to steal money. To preserve the integrity of the nation's self-reporting tax system, the relatively few criminals who are caught undermining and exploiting this system must be punished to deter those tempted to do the same. *See United States v. Cutler*, 520 F.3d 136, 163 (2d Cir. 2008) (finding below-Guidelines sentence substantively unreasonable because "the tax

---

[1] Available at https://www.irs.gov/pub/irs-pdf/p55b.pdf.

8

offenses of which [the defendant] was convicted are the type of offense for which the length of prison term is especially related to the need for deterrence.").  Those who voluntarily comply with their tax obligations need to know that the tax laws are enforced, and those who, like the defendant, deliberately and blatantly choose to violate the tax laws need to know that they will be punished.

The defendant's conduct calls for a sentence oriented toward general deterrence because it was part of a multi-state effort to file fraudulent tax returns to generate large refunds.  On June 27, 2017, the defendant's co-conspirator, Thy Muhammad (of North Carolina), admitted to preparing millions of dollars in false refund claims on behalf of at least eleven clients "[w]ithin the District of Columbia and elsewhere."  *United States v. Thy Muhammad*, 1:17-cr-00112-RDM (D.D.C.), ECF No. 8 at 4-7.  Those claims ranged from $441,014 to $964,742, and the IRS paid out at least three of those claims.  *Id*.  Not only did the defendant fuel this scheme by participating as a filer, but she also referred five clients to Muhammad, including her co-defendant Jacobs.  (Gov't Exh. 101).

Unfortunately, the IRS remains vulnerable to such schemes[2] and so general deterrence should be a crucial consideration of the Court in imposing sentence in this case.  Thus, a Guidelines

---

[2] *See, e.g.,* the following:

DOJ Office of Public Affairs, *Georgia Man Pleads Guilty to Orchestrating Nationwide Tax Fraud Scheme*, U.S. DEPARTMENT OF JUSTICE (Dec. 22, 2021), https://www.justice.gov/opa/pr/georgia-man-pleads-guilty-orchestrating-nationwide-tax-fraud-scheme.

DOJ Office of Public Affairs, *Maryland Accountant Convicted of Preparing False Tax Returns for D.C. Residents*, U.S. DEPARTMENT OF JUSTICE (July 1, 2021), https://www.justice.gov/opa/pr/maryland-accountant-convicted-preparing-false-tax-returns-dc-residents.

(continued...)

sentence is necessary to send a message to potential fraudsters—who might yield to the same allure of enrichment as the defendant—to discourage them from extracting large sums by fraud from a vulnerable tax system.

**B.  A Guidelines sentence would promote respect for the rule of law.**

The defendant has been defiant towards the rule of law, as demonstrated by her persistence in filing false returns after receiving several IRS collection and warning efforts.  Remarkably, on July 25, 2014, the IRS called the defendant requesting the return of the funds it issued to Trinytee SMP Day Spa Trust, but instead, the defendant cashed $46,000 of it the same day.  (Gov't Exh. 54, 144).  In August, she received an IRS 3176 warning letter and a Notice of Levy regarding her false filing for Trinytee SMP Day Spa.  The defendants ended up receiving several more IRS 3176 warning letters for their trusts and trusts belonging to other conspirators.  (Gov't Exh. 80, 81, 89). Not only did they receive such civil IRS notices warning of their filings' wrongfulness, but they were made aware that their conduct was criminal—one IRS letter warned of possible "criminal and civil charges," and the defendant received a copy of an arrest warrant and indictment of an individual who peddled the same type of outlandish scheme.  (Gov't Exh. 78, 114).

Unfortunately, even after the defendant's indictment, her disregard for rule of law manifested as disdain for this Court and its proceedings.  The defendant purposefully clogged this Court's docket with a series of filings that repeatedly asserted frivolous arguments, including, amongst many absurd filings, challenges to this Court's jurisdiction and claims of being "an incapacitated Indian ward, in amity with this government." (ECF No. 122, at 2).  Even now, after

---

DOJ Office of Public Affairs, *New York Man Pleads Guilty to Conspiring to File False Returns*, U.S. DEPARTMENT OF JUSTICE (Oct. 20, 2020), https://www.justice.gov/opa/pr/new-york-man-pleads-guilty-conspiring-file-false-returns.

being found guilty by a jury, the defendant has shown no remorse.  Indeed, her "Objection to Presentence Investigation Report" submitted on May 20, 2022 is replete with false denials of culpability and nonsensical assertions about this case.  For example, the defendant continues to assert that the government presented evidence obtained through "a defective search and seizure warrant as fruit of the poisonous tree" and that the Indictment is faulty because grand jury voting did not comply with Fed. R. Crim. Pro. 6(f).  Moreover, on top of rehashing arguments raised at trial such as the lack of signatures on the false tax returns presented at trial, the defendant asserts that the petit jury "was stacked, bias [sic] and prejudice [sic] and lack [sic] knowledge of monetary system."  Therefore, a substantial sentence is necessary to remedy the defendant's baseless posture towards the rule of law.

### C.  A Guidelines sentence of imprisonment would avoid unwarranted sentencing disparities.

Section 3553(a)(7) states that the Court shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  A Guidelines sentence of 51-63 months would be consistent with those imposed on others convicted at trial for similar conduct in courts throughout the country.

On February 14, 2022, a Maryland accountant was sentenced in the District of Columbia to three years in prison for preparing false tax returns fraudulently claiming $6.6 million in refunds. *United States v. Charese Johnson*, 1:18-cr-00388-RDM (D.N.J. Feb. 14, 2022).  And in that case, unlike here, there was no actual loss to the IRS because a refund was never even issued.  Moreover, in December 2021, a promotor of a mortgage recovery tax refund scheme was sentenced to 12 years in prison after trial conviction and based on tax loss of $4 million from fraudulently induced refund checks.  *United States v. John W. Barry, Jr*, 1:20-cr-00744-RBK (D.N.J. Dec. 13, 2021). Thus, a Guidelines sentence would be consistent with those previously imposed on other tax refund

schemers, taking into account the actual loss from the IRS and the defendant's avaricious object of self-enrichment.

### D.  Restitution

The IRS suffered a total loss of $1,056,044 as a result of the fraudulent tax returns filed by the Curl and Jacobs.  Under 18 U.S.C. § 3663A(a)(1) (the Mandatory Victim Restitution Act, MVRA), "the court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense . . . ."  The defendants in this case have been convicted under 18 U.S.C. § 371 of conspiracy to defraud the United States.  This offense of conviction is among "offenses against property" that are covered by the MVRA.  *United States v. Turner*, 718 F.3d 226, 236 (3rd Cir. 2013); *United States v. Meredith*, 685 F.3d 814, 827 (9th Cir. 2012) (applying MVRA to conspiracy to defraud the IRS in violation of 18 U.S.C. § 371).

Accordingly, Sandra Curl and Percy Jacobs should each be ordered under the MVRA to pay restitution to the IRS in that approximate amount.

### CONCLUSION

For the foregoing reasons, the Court should sentence Sandra Denise Curl to a Guidelines term of imprisonment between 51 and 63 months.

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General,
U.S. Department of Justice
Tax Division

By:   /s/ Jeffrey A. McLellan
JEFFREY A. MCLELLAN
Trial Attorney
Department of Justice, Tax Division
P.O. Box 972
Washington, DC 20044
(202) 514-5181

Jeffrey.A.McLellan@usdoj.gov

By:   /s/ George Meggali
GEORGE MEGGALI
Trial Attorney
Department of Justice, Tax Division
P.O. Box 972
Washington, DC 20044
 (202) 598-5969
George.Meggali@usdoj.gov

By:   /s/ Michael Morgan
MICHAEL MORGAN
Assistant United States Attorney
District of Maryland
6406 Ivy Lane, 8th Floor
Greenbelt, Maryland 20770
(301) 344-0106
MMorgan8@usdoj.gov

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2022, a copy of the foregoing document was filed using the Court's CM/ECF system, which will send copies to counsel of record in this matter.

/s/ Jeffrey A. McLellan
Trial Attorney