# Section B

# Structural Defect Selective Prosecution and Grand Jury Fraud Involving Cooperating witness Thy Nief Muhammad

**SECTION: STRUCTURAL DEFECTS, SELECTIVE PROSECUTION, AND GRAND-JURY FRAUD INVOLVING COOPERATING WITNESS Thy Nief Muhammad**

This stand-alone section consolidates docket-based irregularities, structural constitutional defects, and evidence of selective prosecution involving tax preparer Thy Nief Muhammad, whose conduct formed the basis of the government's investigation. The record, as reflected on the docket and in the government's timing of disclosures, demonstrates defects that render the proceedings void under Rule 60(b)(4), justify relief under Rule 60(b)(6), and establish fraud on the court under Rule 60(d)(3).

## I. STRUCTURAL DEFECTS ESTABLISHED BY THE DOCKET

### A. Defective Warrants and Suppression Motions (Docs. 55, 56, 60; Denied in Doc. 155)

Defendants filed multiple motions challenging the validity of the 2016 search warrants and seeking the supporting affidavits, attachments, and evidence necessary to evaluate probable cause. The warrant materials were not filed until 2022. Despite the absence of the underlying warrant record for years, the Court denied the suppression challenges in Doc. 155 without reviewing the evidence required to rule on the motions. This constitutes a structural Fourth Amendment defect and supports relief under Rule 60, including fraud-on-the-court relief where the adjudication occurred without the operative materials.

### B. Grand-Jury Defects and Constructive Fraud (Docs. 66–69; Denied in Doc. 130)

Defendants demanded access to grand-jury evidence, transcripts, juror qualifications, foreperson identification, and the record necessary to confirm the integrity of the charging process. The docket reflects no grand-jury transcript, no exhibits, no instructions, no voting record, and no foreperson signature. The Court denied the grand-jury motions in Doc. 130 without review of the demanded record. These omissions reflect a structural Fifth Amendment defect and support relief where the validity of the indictment cannot be meaningfully tested.

**C. Speedy Trial Act Violations (Docs. 26, 30, 71, 113, 116, 117)**

The record reflects repeated tolling of the Speedy Trial clock while Defendants objected. The delays were attributable to the government and the Court rather than Defendants. As set forth in the docketed objections, these delays were not excludable and violated statutory and constitutional Speedy Trial rights.

**D. Arraignment Defects (Docs. 34, 40, 46)**

The Court conducted a Faretta hearing and arraignment on the same day, without full discovery, without the warrant materials, and while filings were being returned. Arraignment is a critical stage, and defects occurring at that stage constitute structural error where they impair the ability to make informed decisions and assert defenses.

**E. Returned Filings and Procedural Obstruction (Docs. 18, 20, 24, 29, 222, 223, 315, 320, 321)**

The docket reflects an extraordinary pattern of returned filings that prevented motions from being docketed, preserved, and adjudicated. This obstructed access to the court and constitutes a structural due-process violation. Where filings are returned at scale and critical issues are not preserved through ordinary docketing, the integrity of the adversarial process is compromised.

**F. Late Discovery and Withheld Evidence (Doc. 136)**

The government filed its first meaningful discovery notice on March 2, 2022—years after indictment and weeks before trial. The 2016 seized materials were never certified or used at trial. IRS documents were not certified until 2022, and email evidence was certified the month of trial. This timing reflects Brady and Rule 16 issues and supports due-process relief where the defense was deprived of timely access to material information.

## II. CHRONOLOGICAL TIMELINE OF THE STRUCTURAL DEFECTS

**2016** – IRS seizes materials; none certified or used at trial.
**2019** – Indictment returned with no certified evidence.

**2019–2020** – Filings returned; access to court obstructed.

**2020** – Faretta hearing and arraignment; objections filed.

**2021** – Defective-warrant and grand-jury motions filed.

**2022** – Grand-jury motions denied; discovery filed late; defective-warrant motion denied; trial begins.

**2023–2024** – Continued returned filings; structural defects persist.

## III. SELECTIVE PROSECUTION AND DISCRIMINATORY PLEA BARGAINING: COMPARISON TO Thy Nief Muhammad (Case No. 1:17-cr-112)

The docket-supported contrast between Defendants' prosecution and the treatment afforded to Thy Nief Muhammad reflects unequal charging and sentencing outcomes despite Thy Nief Muhammad's central role as the preparer whose conduct formed the basis of the investigation.

### A. Charged by Information, Not Indictment

Thy Nief Muhammad was charged by information rather than indictment, waived indictment, and pled guilty immediately. Defendants were indicted in 2019 despite key evidentiary certifications not occurring until 2022.

### B. Immediate Guilty Plea and Preferential Treatment

Thy Nief Muhammad pled guilty at his first hearing and waived jury trial. The government's posture reflected immediate cooperation and avoidance of litigation in that case, while Defendants' assertion of rights was met with adverse procedural outcomes reflected across the docket history.

### C. Downward-Departure Motion (Doc. 33)

The government filed a downward-departure motion for Thy Nief Muhammad, reflecting cooperation. Defendants were not afforded comparable leniency.

### D. Sentencing Disparity

Thy Nief Muhammad received 15 months, while Defendants received 30 months, notwithstanding the asserted roles described in the record.

### E. Sealed Plea Agreement

Thy Nief Muhammad's plea agreement was sealed for four years and unsealed on June 28, 2021. The extended seal is consistent with cooperation and concealment of material impeachment information during key stages of Defendants' case.

### F. Same Prosecutors

The same DOJ Tax Division attorneys handled both matters, reinforcing the inference that unequal treatment arose from the same office and decision-makers.

## IV. INDICIA OF COOPERATION AND CONCEALMENT: Thy Nief Muhammad's 2016 D.C. CASE (Case No. 1:16-mj-504) AND THE SEALED 2017 PLEA

The record reflects early federal involvement with Thy Nief Muhammad beginning in 2016— years before the indictment in this case—and docket language indicating case-merger activity consistent with coordination and cooperation. The phrase "Terminate Merged Defendant" dated 06/12/2017 indicates that the D.C. matter was merged into another federal matter, and the Maryland case began the same day the D.C. case was terminated. These docket-timing facts support the conclusion that Thy Nief Muhammad's cooperation status, plea terms, benefits, and statements were material to Defendants' ability to challenge the investigation and charging decisions.

### A. Material Information Not Disclosed in Defendants' Case

If Thy Nief Muhammad provided information used to indict or prosecute Defendants, the government was required to disclose material impeachment and exculpatory information, including cooperation status, plea terms, benefits, and sentencing expectations. The record as

described reflects that Defendants were not informed of Thy Nief Muhammad's cooperation or benefits, and the plea agreement remained sealed through critical periods.

### B. Significance of the June 28, 2021 Unsealing

Although Thy Nief Muhammad entered a guilty plea in 2017, the plea agreement remained sealed until June 28, 2021—nearly two years after the 2019 indictment in this case. At the time of indictment, any cooperation, plea terms, and sentencing expectations were concealed from Defendants and the Court. This concealment deprived Defendants of material impeachment and exculpatory information required under Brady and Giglio principles, prevented meaningful challenges to the grand-jury process, and supports a finding of fraud on the court where the proceedings advanced without disclosure of foundational facts bearing on credibility and investigative integrity.

## V. IMPACT ON THE GRAND JURY AND VALIDITY OF THE INDICTMENT

If Thy Nief Muhammad testified before the grand jury in 2019, or otherwise supplied statements used to secure the indictment, the validity of the indictment is fatally compromised by the combined absence of a grand-jury record and the concealment of material impeachment information.

### A. Withheld Grand-Jury Record and Inability to Test the Charging Process

Defendants demanded the grand-jury record in Docs. 66–69. The docket reflects no grand-jury transcript, exhibits, instructions, voting record, or foreperson signature, and the Court denied the requests in Doc. 130 without review. Where the demanded record is absent and the motions are denied without review, Defendants are deprived of the ability to test whether the indictment was lawfully obtained.

### B. Use of Uncertified Evidence in the Indictment and Trial Posture

The record reflects that IRS documents were not certified until 2022, the 2016 seized materials were never certified or used at trial, and email evidence was certified the month of trial. These

timing facts support the argument that the indictment and subsequent proceedings were pursued without a properly supported evidentiary foundation at the time of charging.

## C. Concealed Cooperation as Structural Grand-Jury Error

A grand-jury indictment obtained through concealed cooperation, undisclosed plea benefits, and the absence of a reviewable grand-jury record constitutes structural error. Where material facts concerning a cooperating witness are concealed and the grand-jury record is withheld, the indictment is rendered void rather than merely voidable.

## VI. FRAUD ON THE COURT (RULE 60(d)(3)) AND VOID JUDGMENT (RULE 60(b)(4))

The combined docket-based defects—returned filings obstructing access to the court, adjudication of dispositive motions without the underlying warrant record, denial of grand-jury challenges without a reviewable grand-jury record, late discovery disclosures on the eve of trial, and concealment of a cooperating witness's plea and benefits—demonstrate fraud on the court and structural due-process breakdown. Where proceedings advance while foundational materials are withheld or effectively shielded from adversarial testing, the integrity of the judicial process is compromised, and relief is warranted under Rule 60(d)(3).

## VII. COMBINED LEGAL IMPACT UNDER RULE 60(b)(4), 60(b)(6), AND 60(d)(3)

The record consolidated here reflects structural defects, constitutional violations, selective prosecution indicators, discriminatory plea bargaining outcomes, grand-jury irregularities, late discovery disclosure, and concealment of material impeachment information concerning Thy Nief Muhammad. Taken together, these defects render the judgment void under Rule 60(b)(4), justify relief under Rule 60(b)(6), and support vacatur for fraud on the court under Rule 60(d)(3).